UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CARA L. F.,

                    Plaintiff,                        Case No. 25-cv-05529-JHC

        v.                                            ORDER

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

# I

## INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income (SSI). Dkt. # 5. She contends that the administrative law judge (ALJ) erred by failing to provide legally sufficient reasons for rejecting medical opinion and Plaintiff's testimony. Dkt. # 12 at 4. For the reasons below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings.

ORDER - 1

## II

### BACKGROUND

*Procedural History.*  This is the third time Plaintiff has sought review of her SSI application filed on February 22, 2018. [1] Dkt. # 8 at 218-228; *see also* Dkt. # 6.  Plaintiff has a long history of denials and reversals before ALJs and this Court; pertinent here, the most recent appeal resulted in directions for the ALJ to re-evaluate Plaintiff's allegations and the opinions of Dr. Duthie and Dr. Neims.  AR 814.

A hearing was held on March 6, 2025, and on April 11, 2025, an ALJ issued a decision finding Plaintiff not disabled.  Dkt. # 8 at 854; *see also* AR 811-854.  Plaintiff did not seek review from the Appeals Council, making the ALJ's ruling the Commissioner's final decision. Dkt. # 8 at 2-7 (Court Transcript Index); *see* AR at 812.

*The Agency's Final Decision.*  To determine whether a claimant is disabled, an ALJ must employ a five-step sequential analysis, examining: "(1) whether the claimant is engaging in 'substantial gainful activity'; (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or combination of impairments that has lasted for more than 12 months; (3) whether the impairment 'meets or equals' one of the listings in the regulations; (4) whether, given the claimant's 'residual functional capacity' [RFC], the claimant can still do [their] "past relevant work"; and (5) whether the claimant "can make an adjustment to other work."  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded by regulation on other grounds*; *see* 20 C.F.R. § 404.1520(a).  Applying this five-step process, the ALJ found:

---

[1] Plaintiff's application was actually filed on February 27, 2018, however, the alleged onset date was later amended to February 22, 2018.  *See* AR 814; AR 221.  The ALJ refers to February 22, 2018 as the onset date and the date the application was filed, and this order does the same.  AR 814, 847.

ORDER - 2

**Step one:**  Plaintiff has not engaged in substantial gainful activity since February 2018, the application date.  AR at 816.

**Step two:**  Plaintiff has the following severe impairments: degenerative disc disease of the cervical spine, trigeminal neuralgia, headaches, major depressive disorder, generalized anxiety disorder, panic disorder, and post-traumatic stress disorder (PTSD). AR at 816.

**Step three:**  These impairments do not meet or equal the requirements of a listed impairment.[2]  AR at 816.

**Residual Functional Capacity:**  Plaintiff's residual abilities are "no worse than fair or moderately limited."  AR at 824.

**Step four:**  Plaintiff can perform light work as defined in 20 C.F.R. 416.967(b) except occasionally climb ladders and scaffolds; occasionally exposure to hazards such as unprotected height and move mechanical part; frequently but not consistently performing stopping, kneeling, crouching, and crawling; understand, remember, and carry out simple instructions; tolerate occasional interaction with supervisors, co-workers, and the public; make simple work-related decisions and only tolerate occasional change and work location; and unable to work at a strict production rate like the type of rate required to work on an assembly line.[3]  AR at 825.

**Step five:**  As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.  AR at 846-847.

---

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926).

[3] Plaintiff does not challenge the ALJ's findings about her physical impairments.  *See* Dkt. # 14 at 2 n.1; *see generally* Dkt. ## 12, 15.

ORDER - 3

### III

#### DISCUSSION

Under 42 U.S.C. § 405(g), this Court may set aside the ALJ's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence . . . is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smartt*, 53 F.4th at 494 (original alterations); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) ("Substantial evidence means more than a mere scintilla but less than a preponderance") (cleaned up). The ALJ determines credibility, resolves conflicts in medical testimony, and resolves any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court must examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. *Id.*

Plaintiff argues that the ALJ erred by failing to provide legally sufficient reasons for rejecting (1) the medical opinion of Dr. Duthie; (2) the medical opinion of Dr. Neims; and (3) Plaintiff's testimony about her mental impairments. Dkt. # 12 at 4. Plaintiff also says there is no need to develop the record further and asks this Court to apply the "credit-as-true" rule to require the ALJ on remand to find Plaintiff disabled; in the alternative, Plaintiff seeks remand for a redetermination. *Id.*

A.    Medical Opinion and Testimony

"'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Woods v. Kijakazi*,

ORDER - 4

32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(a)).[4]  "Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence, while consistency concerns how 'a medical opinion is consistent with the evidence from other medical and nonmedical sources.'"  *Kitchen v. Kijakazi*, 82 F.4th 732, 739-40 (9th Cir. 2023) (quoting *Woods*, 32 F.4th at 792); *see* § 404.1520c (c)(1)-(2).

"[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.  The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id*. § 404.1520c(b)(2)."  *Woods*, 32 F.4th at 792; *see also Kitchen*, 82 F.4th at 739-40.

1.      Dr. Duthie

Dr. Duthie opined that due to Plaintiff's "poor memory and concentration as well as multiple psychiatric symptoms, it is unlikely [Plaintiff] will be able to work on a full time basis over the next year."  AR 535.  The ALJ questioned the supportability of Dr. Duthie's opinion, but ultimately finds: "The opinion is not persuasive because while it might be supported by Dr. Duthie's own exam findings, it is not consistent with the record."  AR 840; *see Woods,* 32 F. 4th at 793 & n.4.

The ALJ pointed to Plaintiff's testimony and self-reported Function Reports to find that Plaintiff's "reported daily activities and abilities are not consistent with the inability to work on a full time basis due to poor memory and concentration and marked difficulty carrying out simple

---

[4] A change to the regulations became effective March 27, 2017, and thus, claims filed after that date are reviewed under the updated regulations.  *See Woods*, 32 F.4th at 789-92 (abrogating the prior "specific and legitimate" standard).

ORDER - 5

instructions, as opined by Dr. Duthie." AR 840-841. While that may be true, the report and testimony the ALJ relied on are not inconsistent with Dr. Duthie's opinion, and the ALJ did not provide an explanation supported by substantial evidence to support the ALJ's findings.

For example, the ALJ said that Plaintiff can "shop[] in stores and by computer" when Plaintiff again checked that she was capable of shopping in stores and by computer on the Function Report form but elaborated that she shops for "groceries in the store, all else usually online because of [her] anxiety and othes [sic] health issues keeps [her] at home." AR 841; AR 276. Elsewhere in the report, she repeatedly said that while she can grocery shop, it is because of necessity and indicates that it is difficult to accomplish. *See* AR 313 (reporting groceries takes "about 2-3 hours to complete because I need to go slow or take breaks"); AR 864 (testifying that when she does grocery store deliveries for extra income, she could "sometimes" go but other times she would "have a panic attack" and "can't complete the order" and "can't go back to the store"); AR 869 (testifying: "I do try to do grocery shopping about every 10 days . . . I'll go and make a large trip . . . sometimes I don't know if I'm going to be able to go out, and so I put a lot of things in the freezer"); AR 276 (reported "challenging to go out to grocery shop"); *id.* ("sometimes I need help . . . with an errand"); AR 277 ("When I go out it is only to get groceries" and for other childcare needs); *id.* (reporting she drives "except when I have anxiety so bad I can't leave house, or when I'm in pain."); *id.* (reporting she cannot go out alone).

Similarly, the ALJ said that Plaintiff "reported no issues preparing food regularly" when in fact Plaintiff checked "Yes" in response to a question if she prepares her own meals but then elaborated that she has "memory issues with cooking times, can not [sic] be consistent with meals so always need[s] quick things on hand in case [she] get[s] migraine, [sic] or nerve attack," and reports cooking "simple foods mostly," listing raw fruits and vegetables. AR 276;

ORDER - 6

*see also* AR 312.  The ALJ similarly listed Plaintiff's reported ability to care for her children and perform some chores as examples of "daily activities and abilities [] not consistent with the inability to work on a full time basis due to poor memory and concentration and marked difficulty carrying out simple instructions."  AR 841.  But these activities too are generally reported—primarily via a checkmark on a form—and then Plaintiff explained how those activities are difficult for her to perform, largely based on her poor memory, concentration, and difficulty carrying out simple instructions.  *Compare* AR 840-841 *with* AR 311 (Plaintiff reported: "Motivation/energy are completely lacking because of how debilitating my conditions can get, depression also, makes it challenging to stay consistent with personal care.  I always use what energy I have to take care of my children first, then I take care of myself if I have the energy"); AR 869 (responding to the question "Are you able to do the housework": "I wouldn't say that.  I would say that like everything else, it's constantly a game of catch up, and I would say that that is probably one of the last priorities. . . it is a constant burden, you know, trying to keep up with everything, and it's very—my thinking is very disorganized a lot of the time.  I'm highly anxious.  I'm very overwhelmed . . . I would say that I try.").

While most of the activities and abilities the ALJ found to conflict with Dr. Duthie's opinion are presented as a list, the ALJ specifically considered Plaintiff's ability to manage her finances:

> The claimant reported the ability to pay bills, count change, handle a savings account, and use a check/book money order (5E/5; 10E).  The ability to manage one's own funds effectively, particularly in cases that may involve granting a relatively large sum of money to an individual at one time, requires significant cognitive facilities such as performing calculations, making financial decisions, dealing with financial institutions, and managing one's personal checking and/or savings accounts.  In addition, managing one's finances independently requires a level of psychological stability that indicates that an individual will make decisions in their own best interests, which is particularly relevant in a case with allegations

ORDER - 7

of mental impairments.  Such activity is inconsistent with serious, marked, or worse mental limitations in many areas of functioning.

AR 840 (citing AR 277 & AR 310-317); *see also* AR 832.  Again, this mischaracterizes Plaintiff's report.  On the page cited, Plaintiff checked a box indicating she could pay bills, count change, handle a savings account, and use a checkbook/money order (all tasks listed on the form), AR 277, and then on the next page in a box that allowed for texts she elaborated that her ability to handle money had changed since the onset of her alleged disability, and stated that it is "difficult to keep track of spending/account at times" and that she "sometimes forget[s] [she] need[s] to pay something."  AR 278; *see also* AR 313-314.  Plaintiff checking a box that she could perform some financial management tasks and then immediately explaining that those tasks were difficult because of memory problems does not conflict with Dr. Duthie's report that she would be unable to work due to "poor memory and concentration," and thus the ALJ's finding was not supported by substantial evidence.

The ALJ next compared Dr. Duthie's opinion with that of other medical sources and concluded that these sources "do not support more than a fair or moderate degree of limitation in any area of mental functioning."  AR 841.  The ALJ relied, in large part, on findings from these sources that Plaintiff was, in part, "well groomed," "neatly dressed," "friendly," and to have "normal speech" and "good judgment."  AR 841 (citing AR 483, 708, 1153-1154, 1173, 1179). The ALJ did not explain how these grooming and appearance-based observations conflict with Dr. Duthie's opinion that Plaintiff's "poor memory and concentration as well as multiple psychiatric symptoms" would prevent her from working.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (rejecting the ALJ's finding that "good eye contact, organized and logical thought content, and focused attention" during therapy contradicted reported symptoms of depression and social anxiety").

ORDER - 8

Nor did the ALJ grapple with the findings from these sources that support Dr. Duthie's opinion.[5] Every medical opinion cited by the ALJ also diagnoses or notes Plaintiff's depression and anxiety, with many sources describing Plaintiff's symptoms to be severe or describing additional conditions such as panic attacks, PTSD, and trigeminal neuralgia. AR 477-495, 784-810, 1134-1181; *see also* AR 480-481 (listing a "marked" effect—"a very significant limitation on the ability to perform one or more basic work activity"—on ability to "communicate and perform effectively in a work setting," "maintain appropriate behavior in a work setting," and "complete a normal work day and work week without interruptions from psychologically based symptoms"); AR 794 (describing Plaintiff reporting panic attacks "many days per week"); AR 1154 ("Overall, these symptoms have caused great distress within their family relationships, social and emotional well-being, occupational/academic success, safety, and overall health and well-being in addition to any other important areas of functioning."). None of the cited sources provide substantial evidence conflicting with Dr. Duthie's findings; and in fact, most align with Dr. Duthie's findings.

For all these reasons, the ALJ's explanation for why Dr. Duthie's opinion is inconsistent with the record is unsupported by substantial evidence, and thus the ALJ committed legal error in rejecting Dr. Duthie's opinion.

2.      Dr. Neims

The ALJ similarly questioned whether Dr. Neims's opinion is supported by the exam findings, but ultimately concluded that the opinion is "not persuasive" because it is "not

---

[5] The ALJ did note that these sources also list Plaintiff's anxiety and depression and even stated that one medical consultant opined Plaintiff "has mild and moderate limitations on adapting or managing oneself, and moderate limitations in the other areas of mental functioning"; but did not explain why the ALJ dismisses these findings. AR 841.

ORDER - 9

consistent with the record.  AR 839.  The ALJ again did not make a finding as to supportability. [6]

*Id.*  The ALJ relied on the same reasoning as she did for Dr. Duthie, and for all the same reasons, the ALJ's explanation is not supported by substantial evidence; and thus the finding dismissing Dr. Neims's opinion contains legal error.

       3.      Plaintiff's testimony

Plaintiff asserts that the ALJ erred by discounting her testimony about her symptoms and limitations.  "When objective medical evidence is inconsistent with a claimant's subjective testimony, an ALJ can 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so.'"  *Smartt v. Kijakazi*, 53 F.4th 489, 494-95 (9th Cir. 2022) (quoting *Garrison*, 759 F.3d at 1014-15).  "[A]n ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony."  *Id.*

The ALJ also found Plaintiff's allegations of disabling mental functioning limitations "not entirely consistent with the evidence of record."[7]  AR 829-831.  The ALJ relied primarily

---

[6] The ALJ plainly did not make a supportability finding for either Dr. Duthie or Dr. Neims.  AR 839-841.  But much of the analysis seems to turn on supportability.  This is apparent from how the ALJ considered Dr. Duthie's opinion "not consistent" with Dr. Neims's opinion because Dr. Duthie "included normal hygiene; depressed, anxious, and overwhelmed mood; denied hallucinations; moderately impaired mood; fully oriented; able to perform serial 3 calculations; not able to perform serial 7 calculations; able to spell 'world' forward and backwards; moderately impaired concentration; good insight, judgment, and impulse control; normal intellectual functioning."  AR 839.  And the ALJ considered the Dr. Neims's opinion "not consistent" with the Dr. Duthie opinion because Dr. Neims's "included well groomed; neatly dressed; low eye contact; anxious and hypervigilant; and logical and lucid speech."  AR 841.  In any event, these are consistent.  The findings of each of these two opinions are also consistent—Plaintiff will not be able to work, AR 535, or, as Dr. Neims's opinion states, she has "very significant limitation on the ability to perform" multiple basic work activities, AR 480-481.  The ALJ providing this, along with medical opinions, as an explanation *for inconsistency* is not supported by substantial evidence, and instead, might be characterized as a supportability issue.  But the ALJ plainly made only a consistency finding, and the Court will not infer a finding the ALJ did not make.  *See Woods,* 32 F. 4th at 793 & n.4.

[7] The ALJ did not make a malingering finding.  *See* AR 811-854; *see Smolen v. Chater*, 80 F.3d 1273, 1284 & n.6 (9th Cir. 1996).

ORDER - 10

on the same analysis the ALJ used to reject the medical opinions. *See* AR 838-841. As with the analysis of Dr. Duthie's opinion, the ALJ listed Plaintiff's self-reported daily activities, which the ALJ found to "not support more than fair or moderate limitations in any areas of mental functioning" or greater than those set forth in the RFC finding.[8] AR 831. This was error. *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."); *see also Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").

Defendant responds that the ALJ may reject Plaintiff's subjective testimony if it conflicts with medical opinion, but the ALJ did not point to medical opinion inconsistent with Plaintiff's testimony. *See* Dkt. # 14 at 3; AR 828-841. The ALJ listed findings from medical opinion and summarily found that they conflict with Plaintiff's testimony; but as explained, the ALJ's summary of these opinions do not capture the findings of these medical opinions. AR 832. For example, the ALJ cited both Dr. Duthie's and Dr. Neims's opinion as evidence of a conflict in the record, but both opinions find that Plaintiff's mental impairments would make it difficult for her to work and substantially confirm Plaintiff's testimony. *Id.*; *see* AR 480-481, 535.

And even where the ALJ did provide an accurate summary, the medical opinion does not conflict with Plaintiff's testimony and, if it does, the ALJ did not explain how it might conflict. For example, the ALJ cited an Urgent Care exam finding that included "a normal appearance; anxious and depressed mood; normal speech; cooperative behavior; and normal thought content, cognition, and judgment" as an example of conflicting medical opinion. AR 832 (citing AR

---

[8] The ALJ only generally cited the "Testimony" without any reference to page number or even which of the multiple hearings she was citing. *See* AR 65-91 (2020 hearing with Plaintiff testimony); AR 578-597 (2023 hearing with Plaintiff testimony); *see* AR 831. The Court assumes the ALJ was referring to the most recent hearing, conducted on March 6, 2025. *See* AR 855-881.

ORDER - 11

798).[9] But as far as the Court can tell, Plaintiff did not testify to anything that conflicts with this medical opinion. Plaintiff repeatedly testified that she had flare ups of debilitating impairments and that those debilitations were often situational. *See* AR 274-289, 304-317, 863-873; *see Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (holding reports of improvement "must also be interpreted with an awareness that improved functioning . . . while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace") (quoting *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011)). The ALJ did not explain how this and other medical opinion conflicts with Plaintiff's testimony. AR 832. Because the ALJ did not provide specific, clear, and convincing reasons, Plaintiff's testimony was rejected in error.

B.     Remedy

As a general principle, an ALJ's error may be treated as harmless where it is "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115. The ALJ erred in evaluating Dr. Duthie's and Dr. Neims's opinion and Plaintiff's testimony. AR 825-845. None of these errors were harmless because if the ALJ credited any of those opinions, it would affect the RFC analysis.

Plaintiff requests that this Court apply the credit-as-true rule. Dkt. # 12 at 18. In general, courts should remand social security cases when additional proceedings can remedy the defects in the Commissioner's decision. *Garrison*, 759 F.3d at 1019. But in appropriate circumstances, "courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits." *Id*. In the Ninth Circuit, courts remand with instructions to award

---

[9] The Court describes this as an accurate summary, but on the cited page, the medical opinion does not mention Plaintiff's appearance. But because earlier in the same medical opinion the physician does mention Plaintiff's appearance as the ALJ describes it, the Court has considered this to be a harmless citation error on the ALJ's part. *See* AR 797-798.

ORDER - 12

benefits "where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the . . . [record] testimony were [properly] credited." *Id.* (quoting *Varney v. Sec. of Health & Hum. Servs.*, 859 F.2d 1396, 1401 (9th Cir.1988)) (applying "credit-as-true" rule); *see also id.* at 1020 (citing *Hammock v. Bowen*, 879 F.2d 498 (9th Cir. 1989)) (applying "credit-as-true" rule to medical opinion testimony).  Here, it is unclear from the record that an award of benefits is required.  Accordingly, remand is appropriate.

## IV

### CONCLUSION

For these reasons, the Court ORDERS that this matter be REVERSED and REMANDED under 42 U.S.C. § 405(g) to the Commissioner for further consideration consistent with this Order.  On remand, the ALJ shall reevaluate Dr. Duthie's and Dr. Neims's opinions; reevaluate Plaintiff's testimony; reconsider at Step Three whether Plaintiff's impairments meet or equal a listed impairment; develop the record and redetermine RFC as needed; and proceed to Step Four and Step Five as necessary.  The Clerk is DIRECTED to enter judgment for Plaintiff and close this case.

Plaintiff requested attorney fees and costs under the Equal Access to Justice Act.  *See* 28 U.S.C. § 2412(d)(1)(A).  To be eligible for fees under the EAJA, a plaintiff must submit an application within 30 days of final judgment.  *See id.* §(d)(1)(B).  Accordingly, Plaintiff may file a motion with such request no later than June 5, 2026.

//

//

ORDER - 13

Dated this 6th day of May, 2026.

John H. Chun
United States District Judge

ORDER - 14